# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **HAROLD D. JOHNSON** | ) | **Case No.** |
|    Debtor | ) | **07-82266-JAC-7** |

| | | |
|---|---|---|
| **FIRST COMMERCIAL BANK** | ) | |
|    Plaintiff | ) | |
| v. | ) | **Adversary Proceeding No.** |
| **HAROLD D. JOHNSON** | ) | **08-80023** |
|    Defendant | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came to be heard for trial on May 14, 2008. Present was Daniel D. Sparks for the Plaintiff, together with the Plaintiff's representative, Rebecca Burbank. The Defendant did not appear, nor did anyone appear for the Defendant. First Commercial Bank announced that it was ready for trial, and the Court undertook to hear testimony and receive evidence. Based on the pleadings, arguments of counsel and ore tenus testimony of Rebecca Burbank, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. First Commercial Bank ("First Commercial") is an Alabama banking institution with is principal place of business in Birmingham, Alabama.

2. Harold D. Johnson (hereinafter, "Johnson" and/or "Debtor") is an individual and the debtor herein.

3. Johnson was formerly a stockholder and the owner of HD Construction, Inc. (hereinafter, "HD" or the "Company").

4. Johnson, at all times relevant, controlled all pertinent decisions and operations of HD.

5. At the request of Johnson and HD, First Commercial extended credit to HD and to Johnson pursuant to various promissory notes, loan agreements and credit cards as detailed herein. Each such note and agreement provided for the payment of reasonable attorney fees in the event of default.

6. Johnson served as a personal guarantor, whose guaranty was continuing and unlimited, of all indebtedness owed by HD to First Commercial Bank.

7.	HD and Johnson defaulted under all First Commercial loan agreements and collateral documents. Johnson filed his Bankruptcy Petition with this Court on August 30, 2007, and seeks a discharge of indebtedness therein.

8.	First Commercial made its initial loan to HD on August 17, 2004 (hereinafter, "Working Capital Loan"), in the amount of $50,120.00 for the purposes of a working capital credit line facility. Said loan was personally guaranteed by Johnson. Said loan was secured by a first lien in all of HD's accounts receivable, equipment and other assets.

9.	In connection with the Working Capital Loan, Johnson submitted certain detailed financial statements and asset and equipment lists to First Commercial, for the purpose of inducing First Commercial to make the loan, and as a representation of the relevant solvency of HD and/or Johnson.

10.	First Commercial made a second loan to HD on January 27, 2005 (hereinafter, "Second Loan"), in the amount of $33,786.60. The purpose of the Second Loan was for the acquisition of a truck and dump bed (collectively, "Dump Truck"). Said loan was secured by said Dump Truck. The Second Loan was also guaranteed by Johnson and further secured, in addition to the Dump Truck, by all equipment of the Company.

11.	The Working Capital Loan was renewed by HD and Johnson on February 20, 2005, and increased in amount from $50,120.00 to $125,100.00, and again personally guaranteed by Johnson. Said loan continued to be secured by a first lien in all accounts receivable, equipment and other assets of the Company.

12.	Finally, on September 20, 2005, as a renewal and consolidation of all of the above loans, First Commercial extended credit to HD in the amount of $150,649.51 (hereinafter, the "Consolidation Loan"), again guaranteed by Johnson. This final Consolidation Loan continued to be secured by a first lien in all accounts receivable, equipment and other assets of the company, including the Dump Truck.

13.	Again, Johnson provided an extensive and detailed list of equipment to First Commercial to induce First Commercial to make the aforesaid loans. Said list was fraudulent, and/or the property on the list has been concealed from the Chapter 7 trustee.

14.	Specifically, by virtue of a financial statement dated June 30, 2004 and provided to First Commercial by Johnson, and otherwise, prior to the making of the initial Working Capital Loan, Johnson represented that HD Construction had in excess of $925,000.00 of equipment then existing to secure a mere $50,000.00 line of credit. Furthermore, at that time, Johnson provided to First Commercial financial statements for HD for the years 2001 through 2004. Said financial statements listed ascending collective equipment values, beginning at a fair market value of $380,000.00 in 2001 and including an amount in excess of $1,000,000.00 in equipment value

through and including in 2004. In other words, Johnson purposely and calculatingly presented to First Commercial a healthy financial picture of HD as a growing business, with increasing assets, and little or no debt.

15. Prior to the making of each subsequent loan and the final Consolidation Loan, Johnson continued to provide First Commercial with financial statements reflecting listings of equipment totaling over $1,000,000.00 in fair market value. Johnson further reflected accounts receivable approaching $250,000.00 as an asset of HD on said financial statements.

16. Furthermore, the Court finds that Johnson provided one or more fraudulent personal financial statements to First Commercial, upon which First Commercial reasonably relied.

17. On said personal financial statement, Johnson represented that he owned his house and land in Florence, Alabama, when in fact he never had any legal ownership in said house and land (which is consistent with his under oath assertions now in his bankruptcy petition and schedules). Said house was and has in fact always been titled only in Johnson's wife's name.

18. Johnson represented in said personal financial statement that he personally owned home furnishings with a fair market value of $30,000.00. The Court concludes that either this representation was false, and/or said property has been concealed from the Chapter 7 trustee.

19. Johnson represented in said personal financial statement that he had personal checking accounts, certificates of deposit, and cash on hand totaling $122,182.00. Johnson has failed to account for the loss or the deficiency of these assets, and or they have been concealed from the Chapter 7 trustee.

20. Johnson represented in said personal financial statement that he owned an unencumbered personal automobiles with a fair market value of $140,000.00 in his own name. Johnson has failed to account for the loss or the deficiency of these assets, and or they have been concealed from the Chapter 7 trustee.

21. Johnson represented in said personal financial statement that he had a retirement plan with a balance of $20,000.00. Johnson has failed to account for the loss or the deficiency of these assets, and or they have been concealed from the Chapter 7 trustee.

22. Johnson further stated in his personal financial statement that he had never filed for personal bankruptcy, when in fact he had filed for personal bankruptcy protection in 1998.

23. After making its loans to HD and to Johnson, First Commercial learned, for the first time, that Johnson had submitted the identical financial statement to other lenders, including ServisFirst Bank of Birmingham, Alabama. Upon information and belief, Johnson executed a pledge to ServisFirst Bank of the same equipment that he had previously pledged as collateral to First Commercial as set out hereinabove. Neither First Commercial nor ServisFirst Bank were aware of each other's respective security agreements.

24. Johnson has testified at his First Meeting of Creditors that he has limited or no business records of assets of HD.

25. Johnson has either concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information including books, documents, records and papers from which Johnson's financial condition or business transactions might be ascertained. The Court specifically finds that Johnson's actions or failure to act were not justified under the circumstances.

26. Johnson is also indebted to First Commercial Bank for a personal credit card, and is further a personal guarantor on a corporate credit card of HD Construction, Inc.

27. Johnson is indebted to First Commercial Bank as of May 14, 2008 under three distinct credit facilities as follows:

Consolidation Loan: Total outstanding balance is $155,029.78, which sum includes principal, interest, late fees, attorney fees and other fees.

HD Construction, Inc.: Credit card personally guaranteed by Johnson. Balance of $13,196.58.

Personal Credit Card: Johnson is indebted to First Commercial Bank pursuant to his personal credit card balance in the amount of $5,338.97.

## CONCLUSIONS OF LAW

28. First Commercial Bank reasonably relied on the numerous misrepresentations of Johnson prior to and in making its lending decisions for each of the above referenced credit facilities.

29. Johnson obtained money through the use of a statement in writing that was materially false, respecting Johnson's or HD's financial condition, on which First Commercial reasonably relied, and to whom Johnson and HD are now indebted, and Johnson made or published said statement with intent to deceive, all within the meaning of 11 U.S.C. §523(a)(2)(B).

30. Johnson is indebted to First Commercial Bank as a consequence of his fraud, embezzlement or larceny, all within the meaning of 11 U.S.C. §523(a)(4).

31. Johnson is liable to First Commercial as a consequence of his willful and malicious injury to First Commercial or the property of First Commercial, all within the meaning of 11 U.S.C. §523(a)(6).

32. Johnson knowingly and fraudulently, in connection with the case, made a false oath or account, all within the meaning of 11 U.S.C. §727(a)(4); specifically, Johnson has failed to accurately schedule his assets including the values of certain properties, including his investment in HD Construction, and otherwise.

33. Johnson has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records and papers from which Johnson's financial condition or business transactions, or HD's financial condition or business transactions, might be ascertained. Johnson's actions or failure to act were not justified under the circumstances, all under the meaning of 11 U.S.C. §727(a)(3).

34. Johnson has failed to explain satisfactorily his loss of assets or deficiency of assets to meet his liabilities, all within the meaning of 11 U.S.C. §727(a)(5).

35. Johnson has, with intent to hinder, delay or defraud a creditor, transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated or concealed, property of Johnson within one year before the date of filing of his bankruptcy petition, or property of the estate, all within the meaning of 11 U.S.C. §727(a)(2).

36. The Court finds that First Commercial Bank is entitled to an award of attorney fees and to judgment as set out herein. A separate judgment will be entered incorporating these findings of fact and conclusions of law therein.

Dated: May 21, 2008

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

xc    Debtor
      Daniel D. Sparks
      Bankruptcy Administrator
      Trustee